UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

FILED
MAY 13 2016
CLERK, US DISTRICT COURT
NORFOLK, VA

Adeptus USA, Inc., )
)
    Plaintiff, )
)
v. ) Case No.: 2:16cv234
)
) **DEMAND FOR JURY TRIAL**
)
Douglas Tripp, )
)
    Defendant. )
)

Serve:
Douglas Tripp
7298 3rd Street South
Mattawan, Michigan 49071

## COMPLAINT

COMES NOW Plaintiff, Adeptus USA, Inc., a Virginia corporation ("Adeptus"), by counsel, for its Complaint against Defendant, Douglas Tripp, an individual ("Doug"), and states as follows:

### The Parties

1. Adeptus is a Virginia stock corporation with its principal office located at 999 Waterside Drive, Suite 2525, Norfolk, Virginia 23510.

2. Doug is an individual and citizen of the State of Michigan whose last known home address is 7298 3rd Street South, Mattawan, Michigan 49071.

### Subject Matter Jurisdiction

3. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity and the amount in controversy, excluding interest and costs, exceeds $75,000.

### Personal Jurisdiction

4. Personal jurisdiction over Doug exists in Virginia because, among other reasons, Doug transacts business in this Commonwealth and has contracted to supply services for Adeptus in Virginia.

## Venue

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this cause of action arose in Norfolk.

## Statement of Facts

### History of the Parties' Prior Business Relationship

6. Adeptus is a distributor, designer, and manufacturer of ready to assemble furniture and related items, and distributes its products to both Internet and traditional retailers located in the United States, Canada, and the Caribbean territories.

7. Doug was a United States' national sales representative and sales manager of Adeptus with key relationships with distributors, importers, retailers, and manufacturers.

8. On or about October 13, 2011, a Virginia stock corporation named Furniture RTA, Inc., which from time to time traded as "Adeptus" (defined herein as "Furniture RTA"), retained the services of Doug and entered into two separate agreements— an Adeptus Sales Management Agreement (*see* **Exhibit A** attached hereto), and a Non Disclosure / Non Compete Agreement (*see* **Exhibit B** attached hereto).

9. In performing his role as sales manager for Furniture RTA, Doug was given access and became privy to Furniture RTA's internal trade secrets, methods, marketing plans, cost and pricing, names and the contact information of clients, suppliers, and manufacturers used in the operation of Furniture RTA's business.

10. Doug used this proprietary information and access to perform the services provided for under the Adeptus Sales Management Agreement and Non Disclosure / Non Compete Agreement.

11. On or about February 14, 2013, Furniture RTA and Doug entered into a new Sales Representative Agreement (the "Agreement") (*see* **Exhibit C** attached hereto) to govern their relationship and Doug's sale and promotion of Furniture RTA's products.

12. On or about May 6, 2015, Furniture RTA was wound-up and its existence as a Virginia stock corporation terminated under the laws of Virginia. Furniture RTA's assets, including, without limitation, its contract rights, were transferred and assigned to the plaintiff, Adeptus USA, Inc. ("Adeptus").

13. Adeptus became a successor in interest and a beneficiary to certain and defined contracts, including the Agreement.

14. Subsequent to the transfer of the Agreement to Adeptus, Doug continued to perform the terms of service provided for in the Agreement for Adeptus, and Adeptus performed the duties under the same by paying Doug such sums owed to him under the Agreement.

15. On or about September 3, 2015, while still working with Adeptus, Doug began to violate the terms of the Agreement.

16. Doug set up a competing business and disclosed and transferred much of Adeptus' confidential and proprietary information to his new business, including supplier and customer lists.

17. Adeptus became aware of Doug's attempts to process sales orders of Adeptus' products directly from Adeptus' manufacturer located in Brazil for a third party buyer.

18. When Adeptus confronted Doug with this breach of his duties under the Agreement, he admitted to establishing a new company similar to Adeptus in the United States and Canada.

19. On April 13, 2016, Doug spoke with Adeptus personnel and confirmed the accuracy of the facts provided for in Paragraph 17 above.

20. On April 15, 2016, Adeptus delivered formal written notice to Doug that his conduct constituted a breach of the Agreement, demanded that he cease and desist from such further action, and delivered formal written notice to Doug terminating the Agreement. (*See* **Exhibit D** attached hereto.)

21. However, to date, Doug continues to violate the Agreement and applicable Virginia law through his unlawful disclosures and breach of his non-compete with his new competing business.

## COUNT I
## VIOLATION OF VIRGINIA TRADE SECRETS ACT
## (Va. Code § 59.1-336 *et seq.*)

22. Adeptus repeats and re-alleges Paragraphs 1-21 as if fully set forth herein.

23. Adeptus' business methods, supplier lists, customer lists, manufacturer lists, and cost and pricing lists are trade secrets that Adeptus has invested significant monetary sums developing to build its business and distinguish itself from its competitors.

24. Adeptus takes reasonable steps to preserve the secrecy of its trade secrets by requiring its sales agents and employees to sign confidentiality agreements and only giving its sales agents and employees limited access to its internal databases of trade secrets.

25. Doug used the relationship with Adeptus to acquire Adeptus' trade secrets as part of Doug's position as a sales agent.

26. Va. Code § 59.1-337 provides that the Court may enjoin actual or threatened misappropriation of trade secrets.

27. Doug has disclosed Adeptus' trade secrets to his own competing business entity, to customers and to others.

28. Doug has used Adeptus' trade secrets to divert business from Adeptus to Doug's competing business, and Adeptus has been damaged as a result.

29. Such violations are material, have caused, and continue to cause monetary damages to Adeptus.

30. In addition to monetary harm, such violations are causing severe and irreparable harm to Adeptus.

31. Adeptus seeks actual and consequential damages, attorneys' fees as provided by the statute, and $350,000 in punitive damages.

## COUNT II
## BREACH OF CONTRACT – NON-DISCLOSURE

32. Adeptus repeats and re-alleges Paragraph 1-31 as if fully set forth herein.

33. Section 5 of the Agreement provides as follows:

> Under no circumstances and at no time shall Sales Representative disclose to any person any of the secrets, methods, suppliers or systems used by Company in its business.

34. Doug has violated this non-disclosure requirement by, among other things, disclosing the identity of Adeptus' suppliers to Doug's new competing business.

35. Such breaches are material, have caused, and continue to cause monetary damages to Adeptus.

36. In addition to monetary harm, such breaches are causing severe and irreparable harm to Adeptus.

## COUNT III
## BREACH OF CONTRACT – CONFIDENTIALITY

37. Adeptus repeats and re-alleges Paragraph 1-36 as if fully set forth herein.

38. Section 5 of the Agreement provides as follows:

> All customer lists, price lists, brochures, reports, and other such information of any nature made available to Sales Representative by virtue of Sales Representative's association with Company shall be held in strict confidence during the term of this Agreement and after its termination.

39. Doug has violated this confidentiality requirement by, among other things, disclosing Adeptus' customer lists and supplier lists to Doug's new competing business.

40. Such breaches are material, have caused, and continue to cause monetary damages to Adeptus.

41. In addition to monetary harm, such breaches are causing severe and irreparable harm to Adeptus.

## COUNT IV
## BREACH OF CONTRACT – NON-COMPETE

42. Adeptus repeats and re-alleges Paragraph 1-41 as if fully set forth herein.

43. Section 5 of the Agreement provides as follows:

> For a period of 2 years from the termination of this agreement, the Sales Rep agrees not to represent any current of [sic] former supplier of the Company, represent companies that compete directly with the Company who purchase furniture from the current or former suppliers of the Company.

44. Doug has violated this restrictive covenant in multiple ways, including contacting Adeptus' suppliers and using them to provide products to customers through his new competing business.

45. Such breaches are material, have caused, and continue to cause monetary damages to Adeptus.

46. In addition to monetary harm, such breaches are causing severe and irreparable harm to Adeptus.

## COUNT V
## INDEMNIFICATION

47. Adeptus repeats and re-alleges Paragraph 1-46 as if fully set forth herein.

48. Section 9 of the Agreement provides as follows:

> Sales Representative shall indemnify and hold Company harmless of and from any and all claims or liability arising as a result of negligent, intentional or other acts of Sales Representative or its agents or representatives.

49. By violating the Virginia Trade Secrets Act, breaching the non-disclosure agreement, confidentiality agreement and non-compete, Doug has intentionally caused harm and injury to Adeptus.

50. Adeptus has incurred attorneys' fees and costs as a result of Doug's violations of the law and his breaches of contract.

51. Adeptus seeks indemnity from Doug to recover its attorneys' fees and costs incurred related to this lawsuit.

### Damages and Relief Requested

WHEREFORE, Adeptus, by counsel, hereby moves and prays this Court enter judgment against Doug as follows:

1. Preliminary and permanent injunctive relief against Doug, enjoining him and all those in active concert and participation with him from directly or indirectly: (1) continuing to disclose or use any of Adeptus' confidential and proprietary information, including supplier lists and customer lists; and (2) contacting and using Adeptus' current and former suppliers to provide products to customer through Doug's new competing business.

2. Compensatory and consequential damages in the amount of $500,000.00;

3. Punitive damages in the amount of $350,000.00, based upon Doug's intentional and willful acts as described herein;

4. Adeptus' attorney's fees and costs pursuant to the Virginia Trade Secrets Act and the indemnity clause of the Agreement; and

5. Such other and further relief as to the Court may seem just and equitable.

## JURY TRIAL DEMAND

Pursuant to Federal Rule of Civil Procedure 38 and Local Rule 38, the plaintiff demands a trial by jury.

Respectfully Submitted,

ADEPTUS USA, INC.

By: _____
Of Counsel

Christopher D. Davis, Esq. (VSB No.: 74809)
Julia A. Rust, Esq. (VSB No.: 87270)
PIERCE MCCOY, PLLC
101 West Main Street, Suite 101
Norfolk, Virginia 23510
Telephone: (757) 277-6772
Facsimile: (757) 257-0387
*Counsel for Plaintiff*